IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KIMBERLY L. CAMBRA　　　　　　：　CIVIL ACTION

　　　　　　v.　　　　　　　　　　：

THE RESTAURANT SCHOOL　　　　：　NO.  04-2688

## MEMORANDUM OF DECISION

THOMAS J. RUETER
United States Magistrate Judge　　　　　　　　　　　　July 19, 2007

Before the court for decision is an action filed by Kimberly L. Cambra,

("plaintiff"), against The Restaurant School, ("defendant"), for employment discrimination and

harassment based on the fact that she is a woman.  She claims she was treated differently from

male employees because she is a female.  Plaintiff further claims she was wrongfully discharged

by defendant after being subjected to hostile and abusive conduct by management of defendant,

and that this conduct violated her civil rights under Title VII, 42 U.S.C.A. § 2000(e)-2(a)(1)-(2)

and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 955(a).  (Doc. No. 1.)

The parties consented to a non-jury trial before the undersigned and the Honorable

Jan E. DuBois referred the trial to this court by Order dated January 23, 2007.  (Doc. No. 37.)

Trial commenced on May 8, 2007 and testimony was heard through May 9, 2007.  Each party

submitted proposed Findings of Fact and Conclusions of Law.

In accordance with Fed. R. Civ. P. 52(a), the court makes the following:

## I.　FINDINGS OF FACT

1.　　Plaintiff was hired by defendant on January 4, 2000 as an Industry Relations Coordinator,

　　　at an annual salary of $38,103.88.  (Def.'s Ex. C.)  Her salary was increased periodically.

(N.T. 5/8/07 at 21-24.)

2.     At the time of the hiring, defendant provided plaintiff with an employment manual, but

did not provide her with a written job description of her duties as Industry Relations

Coordinator.  (N.T. 5/8/07 at 25-27.)  Job descriptions were provided to some employees

and not provided to other employees, including males and females.  (N.T. 5/8/07 at 175;

5/9/07 at 60, 100-01.)

3.     On March 27, 2000, plaintiff was promoted from Industry Relations Coordinator to

Marketing Director, reporting directly to Colin Clifford.  Plaintiff was able to ascertain

her duties from documentation kept by Lynne Byck, plaintiff's predecessor in that

position.  (Pl.'s Ex. 1; N.T. 5/8/07 at 21-24.)

4.     As Marketing Director, plaintiff had occasion to interact frequently with Mr. Clifford

regarding her job duties.  (N.T. 5/8/07 at 32-33.)

5.     Mr. Clifford had complete authority to act on behalf of defendant regarding all aspects of

plaintiff's employment.  (Rev.'d Stip. of Uncontested Facts, No. 4.)

6.     Mr. Clifford was supportive and responsive to plaintiff at times, while at other times he

was slow to respond to her communications.  (N.T. 5/8/07 at 36, 39, 42, 81-82, 121, 123,

156.)  Both male and female employees felt ignored at times by Mr. Clifford.  (N.T.

5/9/07 at 62-63, 104.)  Both male and female employees experienced a loss of autonomy

due to the actions of Mr. Clifford.  (N.T. 5/9/07 at 66, 104.)

7.     In the fall of 2001, plaintiff was instrumental in having a magazine article published

about The Restaurant School.  When plaintiff brought this to the attention of Mr. Clifford,

she was informed that she had no authority to speak on behalf of The Restaurant School.

2

(N.T. 5/8/07 at 43, 46-49.)

8.     On November 6, 2001, shortly after her verbal warning, plaintiff received a written

memorandum from Mr. Clifford.  In the memorandum, Mr. Clifford informed plaintiff

that with regard to the article, she was "overstepping" her role and "giving interpretations

of our company and college that you are not qualified to give."  Plaintiff was instructed to

refrain from:  (1) giving any verbal position on the school, whatsoever, to any form of

media; (2) appearing in any advertisement or any television broadcast or printed material

which concerned the college; and (3) representing the school on any culinary, hospitality

or educational board, club, or institution.  (Pl.'s Ex. 4; N.T. 5/8/07 at 43-45.)

9.     In June 2002, plaintiff was directed by Jeff DeLuca, a Director and Chief Financial

Officer of The Restaurant School, to perform an analysis of the printing costs between

two entities bidding for defendant's printing business.  Innovative Printing and Fencor

Printing were the two companies that submitted bids.  (N.T. 5/8/07 at 54-56.)

10.    Plaintiff's analysis took approximately two weeks.  She concluded that Fencor, the printer

used by defendant, had less expensive pricing than the prices offered by Innovative

Printing.  (N.T. 5/8/07 at 55-58.)

11.    On Saturday, July 13, 2002 at 9:23 a.m., plaintiff e-mailed the results of her analysis to

Jeff DeLuca.  She also copied the e-mail to Mr. Clifford.  In the e-mail, plaintiff indicated

that the pricing offered by Fencor was far more cost effective than Innovative's pricing.

(N.T. 5/8/07 at 58-59.)

12.    At 9:34 a.m., the same day, Mr. Clifford sent a reply e-mail to plaintiff and copied Mr.

DeLuca.  The e-mail informed plaintiff that The Restaurant School would use Innovative

Printing.  Mr. Clifford further instructed plaintiff to retrieve all materials from other

vendors.  He added that no print orders were to be placed with any vendor but Innovative.

(N.T. 5/8/07 at 65.)

13.     Unaware that Mr. Clifford had e-mailed the above reply, plaintiff hand-delivered a hard

copy of the printing analysis to Mr. Clifford.  When she arrived at his office, Mr. Clifford

informed her that regardless of her cost comparison, defendant would use Innovative.

(N.T. 5/8/07 at 60-61.)  Plaintiff also received verbal warnings about complaints both

internally and externally that The Restaurant School had received regarding her behavior.

(N.T. 5/9/07 at 56; Def.'s Ex. J.)

14.     Plaintiff reported the incident to Peggy Liberatoscioli, Director of Human Resources.

Plaintiff informed Ms. Liberatoscioli that she felt she was treated unfairly by Mr. Clifford

and that she was being subjected to a hostile work environment.  (N.T. 5/8/07 at 63.)

15.     When plaintiff returned to work on July 16, 2002, she read Mr. Clifford's e-mail for the

first time.  She explained that she had been asked to do the cost comparison by Mr.

DeLuca.  She also informed Mr. Clifford that she felt she was greeted in a hostile fashion

when she provided him with a hard copy of the analysis.  She further indicated that she

believed that one of her roles as the Director of Marketing was to secure the most cost

effective services for defendant.  She requested a meeting with Mr. Clifford and Ms.

Liberatoscioli.  She hand-delivered a memorandum to Mr. Clifford along with the list of

the print and design contacts he had requested.  (N.T. 5/8/07 at 67-73; Pl.'s Exs. 8, 9, 15.)

16.     The following day, Mr. Clifford directed plaintiff to come to his office.  Plaintiff ignored

his request.  Mr. Clifford sent plaintiff an e-mail, wherein he referenced her failure to

4

come to his office as directed.  He further outlined errors he perceived in her cost

analysis, as well as complaints about plaintiff he received from Innovative and employees

of The Restaurant School.  (N.T. 5/8/06 at 72-73; Def.'s Ex. K.)

17.    On July 18, 2002, plaintiff was informed that Mr. Clifford requested a meeting with her

and Ms. Liberatoscioli.  (N.T. 5/8/07 at 74.)

18.    Plaintiff went to Mr. Clifford's office accompanied by Ms. Liberatoscioli.  Upon her

arrival, plaintiff was presented with a letter of suspension which was read aloud by Mr.

Clifford.  The suspension was scheduled to last two weeks, during which time plaintiff

was prohibited from remaining on the premises of The Restaurant School.  Plaintiff was

suspended due to her inability to follow instructions, caustic nature and inability to

communicate on a professional level.  (N.T. 5/8/07 at 75-81; Def.'s Ex. J.)

19.    At all times relevant to these proceedings, defendant was an at-will employer with a right

to terminate employment at will, with or without cause or advance notice.  (Rev'd Stip. of

Uncontested Facts, No. 12.)  Defendant utilized progressive discipline at its discretion.

Plaintiff was on notice that defendant was an at-will employer and reserved the right to

use progressive discipline at its discretion.  (N.T. 5/8/07 at 105-08.)

20.    Plaintiff was terminated from her position on July 20, 2002.  (Rev.'d Stip. of Uncontested

Facts, No. 11.)  This position was phased out for a two and one-half year period;

plaintiff's duties were assumed by her co-workers.  The position of Director of Marketing

was re-instituted when the need for a full time employee became apparent.  (N.T. 5/9/07

at 16, 79-80, 98-100.)

Having made the above Findings of Fact, this court makes the following:

II.   **CONCLUSIONS OF LAW**

      This court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000(e)(3), and 28 U.S.C. § 1331.  Title VII was enacted to prohibit employers from discriminating against employees with respect to compensation, terms, conditions or privileges of employment.  Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981).  A plaintiff can meet the burden of persuasion by demonstrating that an employer's stated reason for the challenged action is not the true reason, but rather a pretext for unlawful discrimination.  Id. at 253.

      In McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973), a burden-shifting framework was developed for courts to use as a tool in analyzing disparate treatment claims.  The McDonald Douglas framework requires a plaintiff who alleges a violation of Title VII to first establish a prima facie case of discrimination.  The elements of the prima facie case depend upon the type of claim the plaintiff is alleging and "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Burdine, 450 U.S. at 254.[1]

      If the plaintiff establishes a prima facie case, McDonnell Douglas shifts the burden to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment decision.  This burden is one of production, not persuasion.  Brewer v. Quaker State Oil Refinery Corp., 72 F.3d 326, 330 (3d Cir. 1995).  If the defendant offers a legitimate reason for the adverse employment decision, the plaintiff must introduce evidence leading the factfinder either to "disbelieve the employer's articulated legitimate reasons or to

---

      [1]    The Title VII analysis applies to plaintiff's PHRA claims.  "We construe Title VII and the PHRA consistently." Scheidemantle v. Slippery Rock Univ., 470 F.3d 535, 539 (3d Cir. 2006); Atkinson v. Lafayette College, 460 F.3d 447, 454 n. 6 (3d Cir. 2006).

believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 331(quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)). See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). See also Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (same). It is not enough to simply disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination. St. Mary's, 509 U.S. at 519 n.4. The plaintiff retains the burden of persuasion at all times. United States Postal Serv. v. Aikens, 460 U.S. 711, 715 (1983) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

A.    **Wrongful Termination**

In Count I of her Complaint, plaintiff alleges that she was unlawfully discharged by defendant because of her sex. (Complaint at ¶¶ 31-36.) Plaintiff must prove four elements to establish a prima facie case of wrongful termination based on sexual discrimination. She must prove by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she was qualified for that position; (3) she was dismissed despite being qualified; and (4) non-members of the protected class were treated more favorably. Goosby v. Johnson & Johnson Med. Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).

In the instant case, plaintiff has not demonstrated that she was terminated from her position due to her gender. Her wrongful termination claim is based primarily on her allegations that non-members of the protected class were treated more favorably. Specifically, plaintiff avers

that despite her request for a job description, she was not provided with one, while males were provided with such descriptions.  (N.T. 5/8/07 at 175; N.T. 5/9/07 at 60-62.)  The evidence adduced at trial showed that while some employees received job descriptions, both male and female employees of defendant were not given job descriptions.  (N.T. 5/8/07 at 175; N.T. 5/9/07 at 60.)[2]  Plaintiff further contends that male employees were treated more favorably by Mr. Clifford.  However, the evidence showed that at times, both male and female employees were treated poorly by Mr. Clifford.  Males and females were chastised and ignored by Mr. Clifford and experienced a loss of autonomy.  (N.T. 5/08/07 at 146; N.T. 5/9/07 at 62-63, 104.)  Jennifer Shea, plaintiff's witness, testified that a male employee she had hired  "thought that he was feeling a little out of the loop on certain things.  He wasn't too sure what was going on and wasn't being given a lot of support."  (N.T. 5/08/07 at 146.)  Phillip Pinkney, Director of Culinary Arts, testified that he was chastised by Mr. Clifford and occasionally felt he was not given an opportunity to explain his position on certain issues.  (N.T. 5/9/07 at 62-65.)  Karl Becker, Vice President of College Advancement, also testified that he was stripped of his authority by Mr. Clifford.  (N.T. 5/9/07 at 104.)[3]

---

[2]      Jennifer Shea testified that: "Yes, I guess you're right that yes, both men and women did not receive job descriptions."  (N.T. 5/8/07 at 175.)  Mr. Pinkney, Director of Culinary Arts, an employee of defendant since 1998, testified that he never received a job description.  (N.T. 5/9/07 at 60.)

[3]      Mr. Becker testified that when he felt that his autonomy was stripped by Mr. Clifford, he had a meeting with Mr. Clifford:

> [W]e came to an understanding that if I were to remain with the school, that I had to operate within my parameters, and I would certainly report back to him.  He felt that I was undermining his authority in some discussions with our president at the time - - our current president - - and felt that I was keeping him out of the loop. At that point I promised that I would keep him in the loop.

Plaintiff further contends that male employees were disciplined differently than female employees.  Ms. Shea testified regarding several incidents of alleged disparate treatment. The first incident involved a situation wherein a male employee, Jeff DeLuca, maintained pornography on his computer and allegedly was not disciplined for this behavior.  Ms. Shea testified that when she received complaints of this alleged behavior, she "went back to Colin's office and we kind of had a laugh about it, like I was just - - I was just so surprised I really didn't even know what I was supposed to think about it at the time."  (N.T. 5/8/07 at 164.)  Initially Ms. Shea testified that Mr. DeLuca was not disciplined for this behavior.  However, Ms. Shea later testified that Peggy Liberatoscioli, Director of Human Relations, eventually spoke with Mr. DeLuca regarding this issue.  Id. at 165.  Plaintiff also mentioned an incident in which liquor bottles were found in the van of Dennis Liberatoscioli by Mr. Clifford and Ms. Shea.  In response to questioning as to whether she was aware if either man received some sort of disciplinary action for their misconduct, Ms. Shea acknowledged that she was uncertain as to whether either Messrs. DeLuca or Dennis Liberatoscioli were disciplined for their behavior.[4]

In sum, the evidence revealed that plaintiff and Colin Clifford had a strained relationship.  Ms. Shea testified:

> Kimberly and Colin, they just banged heads for some reason.  It was just a – it

(N.T. 5/9/07 at 104.)

[4]     Ms. Shea acknowledged that Messrs. Liberatoscioli and DeLuca could have received some form of disciplinary actions for their behavior.  She further admitted that she did not know everything that went on in terms of disciplinary actions or other types of interaction that may have occurred.  (N.T. 5/8/07 at 175-80.)  Ms. Shea also was uncertain as to when these alleged incidents occurred.  Id. at 168.  Ms. Cambra also acknowledged that it was possible that Mr. Clifford treated other employees, both males and females, as he treated her.  (N.T. 5/8/07 at 50, 108-110.)

> was a difficult relationship.  I could never really put my finger on it.  I know that
> there were some times Colin told me personally that he thought that Kimberly was
> self-promoting and that it was tough to have somebody that was a self-promoting
> person in a position when they're supposed to be promoting the college.

(N.T. 5/8/07 at 156.)  Furthermore, plaintiff was an at-will employee who was subjected to

permissible progressive discipline by defendant.  After plaintiff committed several infractions

and received verbal and written warnings, she was terminated by defendant for legitimate, non-

discriminatory reasons.  (N.T. 5/8/07 at 75-81; Def.'s Ex. J.)  Her duties were assumed by other

employees and the position of Marketing Director was not reinstated until two years and several

months after plaintiff's termination.  (N.T. 5/9/07 at 16, 98-100.)  The allegations advanced by

plaintiff at trial do not establish a prima facie case of wrongful termination.  Plaintiff has not

satisfied the fourth prong; she has not demonstrated that males received more favorable

treatment.[5]  The burden of proof always remains with plaintiff.  United States Postal Serv. v.

Aikens, 460 U.S. at 715.  Since she has not satisfied this burden, plaintiff's wrongful termination

claim fails.[6]

---

[5]       Even assuming arguendo that plaintiff had shown the elements of a prima facie
case of wrongful termination, defendant set forth legitimate, nondiscriminatory reasons for
plaintiff's termination, i.e., plaintiff's caustic nature, her inability to follow instructions, her self-
promotion, and the elimination of plaintiff's position.  (Def.'s Exs. J-L.)  Plaintiff has failed to
establish that the reasons for her termination were pretexual.  It is not enough to simply
disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional
discrimination.  St. Mary's, 509 U.S. at 519 n.4.  The plaintiff retains the burden of persuasion at
all times.  United States Postal Serv. v. Aikens, 460 U.S. 711, 715 (1983) (quoting Texas Dep't
of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)).  The court finds that plaintiff has
not satisfied this burden.

[6]       "Personality conflicts and questioning of job performance are unavoidable aspects
of employment; plaintiff must show legally sufficient evidence to be entitled to an actionable
claim of discrimination."  Hodson v. Alpine Manor, 2007 WL 1491410, at *9 (W.D. Pa. May 21,
2007) (citing Hakins v. Pepsico, 203 F.3d 274, 282 (4th Cir. 2001)).

**B.**     **Hostile Work Environment**

In Count II of her Complaint, plaintiff alleges that was subjected to a sexually hostile atmosphere.  (Complaint at ¶¶ 37-44.)  A hostile work environment claim requires "pervasive and regular" discrimination that creates an environment "severe enough to affect the psychological stability of a minority employee," both subjectively and objectively.  <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1482 (3d Cir. 1990).  Five factors must converge to bring a successful claim for a sexually hostile work environment:  (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the employee; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.  <u>Id.</u>  <u>See also</u> <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 23 (1993).  "The totality of the circumstances must be considered, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance."  <u>Harris v. SmithKline Beecham</u>, 27 F. Supp. 2d 569, 577 (E.D. Pa. 1998).  A single action may be sufficient to support a hostile work environment claim if the act is "of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which plaintiff must work."  <u>Id.</u> at 578.  Generally, however, a plaintiff must show that she was "subjected to repeated, if not persistent acts of harassment."  <u>Bedford v. Southeastern Pennsylvania Transp. Auth.</u>, 867 F. Supp. 288, 297 (E.D. Pa. 1994).  The Third Circuit has defined pervasive harassment as that which "occurs regularly or when incidents are in concert with one another."  <u>Andrews</u>, 895 F.2d at 1484.

11

Plaintiff alleges that on one occasion she was instructed to wear a "short skirt" and "show some leg" at a meeting with a businessman. (N.T. 5/8/07 at 110.) On another occasion, Mr. Clifford accompanied plaintiff to a catering event. Plaintiff testified that Mr. Clifford "was my ride, he was my boss and, for a moment there, it looked like he was my date." Id. at 83-85. Taking plaintiff's version of the facts as true, this court is not persuaded that the incidents which allegedly occurred satisfied the "severe and pervasive" standard contemplated by Andrews. They do not give rise to an inference of "severe and pervasive" harassment. Nor does this court find that the incidents characterized the atmosphere of The Restaurant School. Therefore, plaintiff did not prove by a preponderance of the evidence that she was subjected to a sexually hostile work environment. Accordingly, this court finds that plaintiff's hostile work environment claim fails.

This court carefully reviewed the evidence presented at trial. The court considered plaintiff's prima facie case and the strength of the evidence offered in support of that prima facie case. As set forth above, plaintiff has not proven a prima facie case of gender discrimination. Additionally, plaintiff has failed to present evidence that defendant's stated reasons for terminating plaintiff were pretextual. For all of the above reasons, plaintiff has not carried her ultimate burden of proving intentional discrimination. Accordingly, judgment will be entered in favor of defendant and against plaintiff on all claims. An appropriate order follows.

BY THE COURT:


/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

12

13